**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:18-CR-00134 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH XAVIER ORTIZ | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is Defendant Joseph Xavier Ortiz's motion for presentence

release under 18 U.S.C. §§ 3142(i) and 3145(c) because of the circumstances

surrounding the COVID-19 pandemic.  (Doc. 85.)  Although Defendant

acknowledges that he is subject to mandatory presentence detention pursuant to 18

U.S.C. § 3143(a)(2), he seeks presentence release pursuant to 18 U.S.C. § 3145(c)

on the ground that the COVID-19 pandemic constitutes an "exceptional reason"

warranting his release. (*Id.*)  For the following reasons, Defendant's motion is

denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was charged in a two-count indictment on April 18, 2018, with

conspiracy to distribute and possess with intent to distribute 5 kilograms and more

of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)

(Count 1), and attempt to possess with intent to distribute 500 grams and more of

cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)

1

(Count 2). (Doc. 1.) Defendant had his initial appearance before United States Magistrate Judge Martin C. Carlson on April 20, 2018, and entered a not guilty plea. (Doc. 13.) The Government filed a motion for detention, and Defendant was temporarily detained pending a detention hearing. (Doc. 9.)

At the detention hearing before Judge Carlson on April 26, 2018, Defendant requested pretrial release on the condition of supervision by a third-party custodian named Rebecca Ramos. (Doc. 88, p. 2.)[1] Judge Carlson granted the Government's motion for detention, and ordered Defendant detained pending trial based on the finding that Defendant did not present sufficient evidence to rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3) arising from the maximum penalties associated with the charged offenses. (Doc. 20, p. 2.) Specifically, Judge Carlson ordered Defendant detained pending trial because the court found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. (*Id.*) Judge Carlson made specific findings that the weight of the evidence against the Defendant is strong; Defendant is subject to a lengthy period of incarceration if convicted; and that Defendant's prior criminal history and history of substance abuse favor detention. (*Id.*)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

On October 10, 2019, a plea agreement was filed in which Defendant agreed, among other terms and conditions, to plead guilty to Count 1 of the indictment, conspiracy to distribute and possess with intent to distribute 5 kilograms and more of cocaine hydrochloride.  (Doc. 67, p. 1.)  Defendant consented to proceed before Chief United States Magistrate Judge Susan E. Schwab for the purpose of entering a guilty, and he entered a guilty plea on October 22, 2019.  (Docs. 71, 73.)  Following the plea, Judge Schwab issued an order recommending that United States District Court Judge Yvette Kane enter an order adjudging Defendant guilty.  (Doc. 75.)  On November 6, 2019, Judge Kane entered an order adopting Judge Schwab's recommendation, and scheduling Defendant's sentencing hearing for January 29, 2020.  (Doc. 76.)

On November 19, 2019, this case was reassigned to this court by verbal order of Chief United States District Court Judge Christopher C. Conner.  On December 17, 2019, this court cancelled the sentencing hearing set for January 29, 2020, and instead scheduled a presentence conference for March 19, 2020.  (Doc. 77.)  The final Presentence Investigation Report ("PSR") was completed on March 2, 2020.  (Doc. 79.)  Based on the discussion with counsel during the presentence conference on March 19, 2020, the court scheduled Defendant's sentencing hearing for June 18, 2020, with Defendant's sentencing memorandum due by May

15, 2020, and the Government's sentencing memorandum due by May 29, 2020.
(Doc. 84.)

Since late 2019, the world's attention has increasingly focused on COVID-19, an infectious disease caused by a novel strain of coronavirus. *Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/health-topics/coronavirus #tab=tab_1 (last visited Apr. 14, 2020).  The first reported cases of COVID-19 occurred in late 2019 in Wuhan, China. *See Coronavirus Disease 2019: Situation Summary*, CENTERS FOR DISEASE CONTROL AND PREVENTION (updated Apr. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html. Since that time, the coronavirus has grown exponentially and become a global pandemic, with 213 countries reporting confirmed cases of the disease. *Coronavirus Disease (COVID-19) Pandemic*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited Apr. 16, 2020).  At the time of this writing, there were 2,078,605 confirmed cases of COVID-19 around the world, including 139,515 confirmed deaths. *Coronavirus (COVID-19) Dashboard*, WORLD HEALTH ORGANIZATION, https://covid19.who.int/ (last visited Apr. 17, 2020).  The United States has become a particular hot spot for the disease, with 632,781 confirmed cases, and 28,221 deaths as of the time of this writing. *Id.*

Although most people who become sick from COVID-19 develop only mild or moderate respiratory symptoms and recover with no medical intervention, a minority of cases lead to serious illness that can result in hospitalization or death. *Q&A on Coronavirus (COVID-19): What Are the Symptoms of Coronavirus*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 14, 2020).  COVID-19 affects people of all demographics, but some populations—most notably elderly individuals and individuals with preexisting medical conditions—are more susceptible to developing serious cases of the disease than others.  *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 14, 2020).

At present, there is no vaccine for COVID-19, and no antiviral medications have proven effectiveness in treating the disease.  *Q&A on Coronavirus (COVID-19): Are There Any Medicines or Therapies that Can Prevent or Cure COVID-19?*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited Apr. 17, 2020).  In the absence of such solutions, governments have turned to non-medical interventions to try to slow the spread of the disease, including school closures, restrictions on businesses and large gatherings, stay-at-home orders, and "social distancing" policies.  *See, e.g.*, *Social*

*Distancing, Quarantine, and Isolation*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.  In line with those policies, the Commonwealth of Pennsylvania has issued a mandatory stay-at-home order for all individuals in the Commonwealth and has closed all schools, among other measures to combat the disease.  *See* Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home (Apr. 1, 2020), https://www.governor.pa.gov/wpcontent/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf; *Governor Wolf Announces Closure of Pennsylvania Schools*, GOVERNOR TOM WOLF (Mar. 13, 2020), https://www.governor. pa.gov/newsroom/governor-wolf-announces-closure-of-pennsylvania-schools/.

It is against this backdrop that Defendant requests presentence release from the Adams County Adult Correctional Complex ("ACACC"), where he is currently detained.  Defendant contends that his release will further the "new global goals of 'social distancing' and 'flattening the curve.'"  (Doc. 86, p. 6.)  He asserts that he is among the group of people that the Centers for Disease Control and Prevention ("CDC") has categorized as the most-at-risk for contracting COVID-19 because he is "incarcerated in a communal setting and has virtually no ability to exercise the precautions being trumpeted on a daily basis by countless sources."  (*Id.*)  Defendant questions whether his sentencing date of June 18, 2020, is "viable" in

light of the COVID-19 circumstances, and wonders whether he will be transported

to a federal facility in the "foreseeable future." (*Id.* at 6.)  Defendant argues that he

is in a class of individuals whose very existence is "tantamount to being housed

with a ticking time-bomb." (*Id.* at 6.)  Although Defendant provided extensive

data about the COVID-19 pandemic worldwide, nationally, and in Pennsylvania,

and also cited articles and studies discussing transmission of contagious diseases

generally within prison populations, *see* Doc. 86, pp. 8–14, Defendant did not

provide the court with any information specific to his place of confinement.  Also,

notably, Defendant does not allege that he has contracted COVID-19, experienced

any symptoms consistent with COVID-19, or has any preexisting condition or

other individual circumstance that makes him more vulnerable to COVID-19 than

other prisoners.  (*See generally* Doc. 86.)  He further fails to allege that there are

any diagnosed cases of COVID-19 at the ACACC, and that he has had contact with

any individual who has COVID-19.  (*Id.*)  In fact, according to the PSR, Defendant

has not identified any physical health concerns.  (Doc. 79, ¶¶ 44–45.)

The Government is opposed to Defendant's motion for presentence release,

and filed a brief in opposition.  (Doc. 88.)  The Government argues that

Defendant's presentence detention is statutorily mandated pursuant to 18 U.S.C.

§ 3143(a).  (*Id.* at 1, 3–5.)  In addition, the Government asserts that Defendant's

motion should be denied because the reasons given in support of the motion

"neither undermine the Court's prior conclusion that no combination of conditions would ensure the safety of the community nor provide any compelling reason to justify his temporary release pending sentencing."  (*Id.* at 1, 5–11.)

## DISCUSSION

Defendant entered a guilty plea and is awaiting sentencing.  In this circumstance, Defendant must be detained pending sentencing, based on his offense of conviction, unless either the court determines that there is a substantial likelihood that a motion for acquittal or new trial will be granted or the Government recommends that no sentence of imprisonment be imposed, and the court finds that the Defendant is not likely to flee or pose a danger to any other person or the community.  18 U.S.C. § 3143(a)(2).  Because Defendant entered a guilty plea and the Government is recommending a sentence of imprisonment, the exceptions provided in 18 U.S.C. § 3143(a)(2) do not relieve the court of the obligation to require presentence detention.

Nonetheless, Defendant has filed his motion, pursuant to 18 U.S.C. § 3145(c), as an appeal from the prior detention order on the ground that the COVID-19 pandemic constitutes an "exceptional reason" establishing that he should be temporarily released.[2]  (Doc. 86, p. 16.)   There is a split in authority

---

[2] Defendant also invokes 18 U.S.C. § 3142(i) as a basis upon which the court could release Defendant.  (Doc. 86, pp. 6, 17–20.)  This statutory provision provides: "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines

regarding the application of 18 U.S.C. § 3145(c) when a district court is sitting in original judgment of detention pending sentencing.  However, the court is persuaded by the thorough reasoning and analysis in *United States v. Williams*, 903 F. Supp. 2d 292, 295–302 (M.D. Pa. 2012), and joins the majority of courts concluding that a district court possesses the discretion to consider a temporary release pending sentencing under 18 U.S.C. § 3145(c).  *See also United States v. Smith*, 34 F. Supp. 3d 541, 545–52 (W.D. Pa. 2014) (holding that the district court has authority to release defendant pending sentencing under Section 3145(c)).

In order to address Defendant's request for temporary release pending sentencing, the court must first determine whether Defendant meets the criteria for release set forth in 18 U.S.C. §§ 3143(a)(1) or (b)(2).  *See* 18 U.S.C. § 3145(c). Under the pertinent subsections of Section 3143, release may be authorized if the court finds by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released.  If the court makes these findings, then the court may order the Defendant's release, under appropriate conditions, if "it is clearly shown that there are exceptional

---

such release to be necessary for preparation of the person's defense or for another compelling reason."  Defendant invokes the "compelling reason" ground for temporary release in Section 3142(i).  Because the court believes that the "compelling reason" and "exceptional reason" bases for temporary release require the same analysis, the court will not separately address this argument or determine whether Section 3142(i) is applicable with respect to a motion for presentence release.

reasons why such person's detention would not be appropriate." 18 U.S.C.

§ 3145(c).

### A. Defendant is not eligible for presentence release based on the risk of non-appearance and danger to the community.

In considering a temporary release of a defendant pending sentencing, the

court must find by clear and convincing evidence that the defendant is not likely to

flee or pose a danger to the safety of any other person or the community if released

under conditions specified in 18 U.S.C. §§ 3142(b) or (c). *See* 18 U.S.C.

§ 3143(a)(1).

At the detention hearing before Judge Carlson on April 26, 2018, Judge

Carlson granted the Government's motion for detention, and ordered Defendant

detained pending trial based on his finding that Defendant did not present

sufficient evidence to rebut the presumption in favor of detention under 18 U.S.C.

§ 3142(e)(3) arising from the maximum penalties associated with the charged

offenses. (Doc. 20, p. 2.) Specifically, Judge Carlson ordered Defendant detained

pending trial because the court found by clear and convincing evidence that no

condition or combination of conditions of release would reasonably assure the

safety of any other person and the community. (*Id.*)

Defendant argues that the COVID-19 outbreak constitutes a change in

circumstances since Judge Carlson's detention order in April 2018, because the

pandemic poses a direct risk to Defendant that is heightened if he continues to be

detained pending sentencing.  (Doc. 86, pp. 17–21.)  This argument relates to the "exceptional reason" factor under 18 U.S.C. § 3145(c), and is addressed in the following section.

The Defendant concedes that his advisory guideline range is "robust" and that he has been classified as a career offender.  (*Id.* at 6.)  However, Defendant asserts that his offense of conviction does not involve violence or weapons, and notwithstanding the length of sentence, "he is a low risk to abscond and poses little, if any, danger to the community."  (*Id.* at 7.)  He also points out that he has incurred no disciplinary actions during his detention to date, and has completed a drug and alcohol program.  (*Id.*)

The arguments advanced by Defendant do not undermine the findings made by Judge Carlson at the detention hearing in April 2018.  Defendant is guilty of conspiring with others to obtain kilogram quantities of cocaine for distribution in the York, Pennsylvania area.  (Doc. 79, ¶¶ 6–15.)  Defendant has agreed that he is responsible for at least five but less than fifteen kilograms of cocaine.  (Doc. 67, ¶ 12.)  The PSR classifies Defendant as a career offender based on two prior felony drug offense convictions, specifically two controlled substance offenses in York, Pennsylvania in 2003 and 2008.  (*Id*. ¶¶ 28, 34–35.)  Defendant's criminal history demonstrates that he has returned to drug trafficking following each of his prior convictions and periods of incarceration.  His offense of conviction carries a

mandatory minimum sentence of ten years, with an advisory guideline range of 262 to 327 months.[3]  (*Id.* ¶¶ 59, 60.)  Defendant has abused alcohol for at least ten years, and is described as an alcoholic.  (*Id.* ¶¶ 47–49.)  It is to Defendant's credit that he completed a drug and alcohol treatment program while detained, but the court also appreciates the road to recovery for a sustained alcohol abuse problem is long.  In any event, Defendant has candidly explained that it was the "allure of the money" that caused him to traffic controlled substances, and he consumed alcohol to "calm his nerves."  (*Id.* ¶ 48.)

Based on the nature of the offense of conviction, Defendant's prior criminal history and recidivism, the length of the potential sentence to be imposed, and Defendant's history of alcohol abuse, the court finds that there is no condition or combination of conditions that will reasonably assure the court that Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released.

---

[3] The advisory guideline range calculated in the PSR is based on the classification of Defendant as a career offender.  Based on the presentence conference the court held with counsel on March 19, 2020, the court is aware that Defendant objects to his classification as a career offender, and will present various arguments, as well as a motion for downward departure and variance, in support of a sentence below the advisory guideline range calculated in the PSR.  The court is noting the advisory range calculated in the PSR for purposes of resolving the motion for release, and this opinion should not be construed as a ruling on Defendant's arguments related to the career offender classification.

**B. Defendant is not eligible for presentence release because he has not made an individualized showing of "exceptional reasons."**

Based on the above finding, the court is not obligated to address the "exceptional reasons" element in 18 U.S.C. § 3145(c).  However, because the main argument raised by the Defendant in support of his request for temporary release pending sentencing is that the COVID-19 pandemic is an "exceptional reason" (or "compelling reason"), the court finds it appropriate to address this element.

Section 3145(c) does not define what constitutes an "exceptional reason." *See* 18 U.S.C. § 3145(c).  The court also does not have the benefit of Third Circuit guidance on the definition or parameters of this specific term.  However, the court is guided by the decisions of other courts that have defined "exceptional" as something out of the ordinary that distinguishes the defendant's situation from that of other defendants subject to mandatory presentence detention.  *See Smith*, 34 F. Supp. 3d at 553–54 (citing *United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007); *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004); *United States v. Koon*, 6 F.3d 561 (9th Cir. 1993); *United States v. Herrera-Soto*, 961 F.2d 645, 646 (7th Cir. 1992)).  The test is a flexible one, vesting the court with discretion to determine whether a particular set of circumstances are "exceptional" based on a fact-intensive inquiry.  *Id.*

Defendant contends that the "exceptional reason" here is that he is in a group at heightened risk of contracting COVID-19 based on the fact that he is

incarcerated.  (Doc. 86, p. 6.)  Because of the COVID-19 pandemic, a body of case

law has quickly developed in this district that provides guidance on when release

from detention may be warranted based on COVID-19 concerns (albeit in different

detention contexts).

In *Thakker v. Doll*, __ F. Supp. 3d __, 1:20-CV-00480, 2020 WL 1671563

(M.D. Pa. Mar. 31, 2020), United States District Judge John E. Jones, III

considered a request for preliminary injunctive relief in a habeas corpus case

brought by a number of immigration detainees with chronic medical conditions

that made them more susceptible to COVID-19.  *Id.* at *1.  Given the seriousness

of the COVID-19 pandemic, the conditions in the facilities in which the petitioners

were detained, and the petitioners' underlying health conditions, the court found

that the petitioners would suffer irreparable harm if preliminary injunctive relief

were not granted.  *Id.* at *3–7.  The court similarly concluded that petitioners had

established a likelihood of success on the merits of their petitions and that the

balance of equities and public interest favored preliminary injunctive relief.  *Id.* at

*7–9.  Accordingly, the court granted the petitioners' motion for preliminary

injunction.  *Id.* at *10; *see also Hope v. Doll*, No. 1:20-CV-00562 (M.D. Pa. Apr.

7, 2020) (granting habeas relief to a class of petitioners that was similarly situated

to the class of petitioners in *Thakker* for substantially the same reasons as those

expressed in *Thakker*).

Unlike the petitioners in *Thakker*—individuals who were at increased risk of contracting COVID-19 but did not have confirmed cases of the disease—Chief Judge Conner addressed a petition in *Camacho Lopez v. Lowe*, No. 3:20-CV-00563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020), involving an immigration detainee who had a confirmed case of COVID-19.  *Id.* at *1.  The court in *Camacho Lopez* distinguished the case from *Thakker* on that basis.  *Id.* at *6.  Because the petitioner had already contracted COVID-19, the question of whether habeas corpus relief was warranted in *Camacho Lopez* was based on the medical treatment he was receiving for the disease, rather than on any preventive measures the facility was taking to slow the spread of the disease.  *Id.* at *7.  Analyzing the case through that lens, the court concluded that preliminary injunctive relief was not warranted because the petitioner had received adequate medical care for his COVID-19 illness.  *Id.* at *7–9.

Following *Thakker* and *Camacho Lopez*, United States District Judge Yvette Kane considered a habeas petition brought by an immigration detainee who had not been diagnosed with COVID-19, but had been assessed as possibly having anemia, which could potentially affect his immune system.  *See Umarbaev v. Lowe*, 1:20-CV-00413, 2020 WL 1814157, at *5 (M.D. Pa. Apr. 9, 2020).  The court found that the risk of contracting COVID-19 was not sufficient to grant habeas corpus relief and found that the petitioner was not otherwise entitled to

relief when considering his specific medical needs, the respondent's response to

those medical needs, and the respondent's response to the COVID-19 pandemic

generally.  *Id.* at *7.

On the same day that Judge Kane decided *Umarbaev*, Chief Judge Conner

considered another habeas corpus claim based on the COVID-19 pandemic in

*Verma v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149 (M.D. Pa. Apr. 9, 2020).

The petitioner in *Verma* was 67 years old and had a number of medical conditions

that made him more vulnerable to COVID-19—including cardiovascular disease,

pre-diabetes, high blood pressure, high cholesterol, and angina—but had not tested

positive for COVID-19.  *Id.* at *2.  The petitioner did not advance specific legal

theories entitling him to habeas corpus relief and instead simply relied on the

court's decision in *Thakker* to request relief.  *Id.* at *3.  The court in *Verma*

concluded that the petitioner was not entitled to habeas corpus relief because he

had failed to make an individualized showing of facts that would justify such

relief.  *Id.* at *5–7.

Although there is no set formula for determining when a release from

presentence detention may be warranted based on the risks from COVID-19, this

court finds that *Thakker*, *Camacho Lopez*, *Umarbaev*, and *Verma* provide a useful

list of factors to consider in such a case.  A court considering a detained

individual's request for release based on the COVID-19 pandemic may consider

(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease; (2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19 based on age, preexisting medical condition, or some other specific reason; (3) whether the petitioner has been directly exposed to COVID-19; (4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19; (5) the efforts that the prison has made to prevent or mitigate the harm caused by COVID-19; and (6) any other relevant factors. *See Saillant v. Hoover*, No. 1:20-CV-00609, 2020 WL 1891854, at *4 (M.D. Pa. Apr. 16, 2020) (compiling factors).

It is not enough for a detained individual to allege that he is detained and presented with a risk of contracting COVID-19 that is common to all prisoners. Rather, the detainee must make an individualized showing that he is entitled to release when considering the above factors. *See Verma*, 2020 WL 1814149, at *5–7. As the Third Circuit has noted in the analogous context of motions for compassionate release under 18 U.S.C. § 3582, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, __ F.3d __, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

In this case, Defendant argues generally that he is in a class of individuals whose very existence is "tantamount to being housed with a ticking time-bomb." (Doc. 86, p. 6.)  However, Defendant did not provide the court with any information specific to his place of confinement.  Also, notably, Defendant does not allege that he has contracted COVID-19, has experienced any symptoms consistent with COVID-19, has any preexisting condition or other individual circumstance that makes him more vulnerable to COVID-19 than other prisoners, that there are any diagnosed cases of COVID-19 at the ACACC, or that he has had contact with any individual who has COVID-19.  (*See generally* Doc. 86.) According to the PSR, Defendant has not identified any physical health concerns. (Doc. 79, ¶¶ 44–45.)  Absent any of those allegations, Defendant is asserting that he is entitled to release because he is detained and subjected to a generalized risk of contracting COVID-19.  Such a claim, however, is insufficient to establish an "exceptional reason" warranting presentence release.  *See, e.g.*, *United States v. Stevens*, No. 19-350-02, 2020 WL 1888968 (E.D. Pa. Apr. 16, 2020); *United States v. Jones*, No. 18-100, 2020 WL 1674145 (W.D. Pa. Apr. 6, 2020); *United States v. Felix*, No. 5:19-CR-711, 2020 WL 1677494 (N.D. Ohio Apr. 6, 2020); *United States v. Ordonez*, No. CR-18-00539, 2020 WL 1659919 (D. Ariz. Apr. 3, 2020); *United States v. Molina*, No. 2:19-CR-00102, 2020 WL 1640182 (N.D. Ala. Apr.

2, 2020); *United States v. Kerr*, No. 3:19-CR-296, 2020 WL 1529180 (N.D. Tex. Mar. 31, 2020).[4]

Finally, Defendant questions whether his sentencing date of June 18, 2020, is "viable" in light of the COVID-19 circumstances, and wonders whether he will be transported to a federal facility in the "foreseeable future." (Doc. 86, p. 6.) Although the court appreciates the fluidity of the COVID-19 circumstances, the court currently anticipates that Defendant's sentencing hearing will proceed as scheduled on June 18, 2020. Chief Judge Conner has entered General Orders continuing in-court proceedings, with the most recent General Order expiring on May 31, 2020. (*See* General Order 20-01, Supplement to General Order 20-01, and General Order 20-10.) Accordingly, at present, the Defendant's scheduled sentencing hearing has not been continued by the General Order. However, in the event that the General Order continuing in-court proceedings is extended beyond June 18, 2020, then the court will confer with counsel to determine whether the

---

[4] The court applies the same rationale to Defendant's argument that his exposure to contracting COVID-19 in prison "may violate the Eighth Amendment's prohibition against cruel and unusual punishment." (Doc. 86, pp. 21–22.) Relying on *Helling v. McKinney*, 509 U.S. 25 (1993), and a line of cases following *Helling* that found that an inmate's exposure to a variety of dangerous prison conditions could violate the Eighth Amendment, Defendant asserts that when prison officials fail to adequately protect inmates from the risk of contracting COVID-19, the Eighth Amendment is violated, and release is constitutionally mandated. (*Id.*) Because Defendant has not made an individualized showing that he is exposed to a greater risk of contracting COVID-19 than the general prison population either due to any personal vulnerability or the specific conditions at ACACC, the court will not address this argument any further. *Cf. Stevens*, 2020 WL 1888968 at *5–6 (declining to grant release under the Eighth Amendment because defendant did not show that Bureau of Prison officials were being deliberately indifferent to the "inmates' serious medical needs" in light of COVID-19).

sentencing hearing can proceed pursuant to an exemption established in the General Order. (*See* General Order 20-01, ¶ 2.)

Even if it becomes necessary to reschedule Defendant's sentencing hearing, the mere fact of rescheduling—absent some other change in Defendant's circumstances—does not compel the conclusion that Defendant's presentence detention should be reconsidered.  As explained, Defendant has not identified any specific conditions at ACACC that expose him to a greater risk of contracting COVID-19 than the general prison population.

### C. The court denies Defendant's request for a hearing.

Defendant requested a hearing on his motion to present the testimony of proposed third-party custodian, Rebecca Ramos, and to advance argument in support of the motion.  (Doc. 87, ¶ 2.)  The court may conduct an evidentiary hearing as part of its review of a presentence motion for release, but is not required to do so.  *See United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019); *United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994); *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988); *see also Jones*, 2020 WL 1674145, at *2–5.  In this instance, the court declines to schedule a hearing, instead reaching a decision on the papers.  In making this decision, the court notes that Ms. Ramos is the same individual who was proposed—but not accepted—as a third-party custodian at Defendant's detention hearing in April 2018.  Also, in light of the court's

conclusions regarding the factors addressed in Sections A and B of this discussion, the court does not find it necessary to convene a hearing for Ms. Ramos to testify a second time under these circumstances.  In addition, because the court has considered all of the arguments presented in the excellent briefs submitted by counsel, the court does not believe that a hearing is necessary to assist the court in reaching a conclusion.

## CONCLUSION

For the reasons stated herein, Defendant's motion for presentence release is denied.  (Doc. 85.)  However, the court recognizes that the circumstances surrounding the COVID-19 pandemic can change rapidly.  Accordingly, although the motion is denied, the denial is without prejudice to Defendant filing a renewed motion if his individual circumstances change with respect to the pandemic.


s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: April 17, 2020